```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD PAINTER, JR,            )
            Plaintiff,         )
                               )
       v.                      ) Civil Action No. 05-1273
                               ) District Judge Terrence F. McVerry
WARDEN DUNKLE, et al.,         ) Magistrate Judge Amy Reynolds Hay
            Defendants.        )
```

## REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the motions to dismiss filed by Defendant Emerson Turnbull (named as Jane Doe in the Complaint) (doc. nos. 17 & 20) be granted and that the motion to dismiss filed by Defendant Dr. George Castellano (doc. no. 18) be granted. It is further respectfully recommended that the motion to dismiss filed by Defendants Warden Dunkle and Lt. Roxanne Kleper (doc. no. 28) be granted as to Defendant Dunkle and denied as to Defendant Kleper.

II.  REPORT

Plaintiff, Ronald Painter, a pre-trial detainee previously confined at the Jefferson County Prison (JCP), commenced this action against the following Defendants: Warden Dunkle, former warden of the JCP; Lt. Roxanne Kleper, correctional officer at the JCP; George Castellano, M.D., on call doctor at the JCP; and Jane Doe, on call nurse at the JCP. Plaintiff alleges that Defendants violated his rights as protected by the Fourteenth Amendment of the United States Constitution. Defendants' motions are discussed below.

A.   <u>Standard of Review</u>

All of the Defendants have filed motions to dismiss (doc. nos. 17, 18, 20 & 28).  Pursuant to Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss may be granted by the court if it is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation."  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true.  <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).[1]

B.   <u>Plaintiff's Allegations</u>

In his Complaint, Plaintiff alleges that he was committed to the JCP on September 28, 2004, as a pre-trial detainee.  Plaintiff is handicapped and walks with a cane.  On October 1, 2004, Plaintiff was

---

1. In addition, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in considering a motion to dismiss under Rule 12(b)(6).  <u>Pryor v. National Collegiate Athletic Ass'n.</u>, 288 F.3d 548, 560 (3d Cir. 2002) (noting that documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim and may be considered by the court in deciding a motion to dismiss); <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); <u>Chester County Intermediate Unit v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990).

showering in the JCP showers and fell and was knocked unconscious. The JCP showers are not equipped with non-slippery floor surfaces, do not have handrails and are not handicapped accessible. Plaintiff was taken to the Brookville Hospital Emergency Room where it was determined that his blood pressure was unusually high. He was returned to the JCP four hours later with instructions to have his blood pressure monitored three times a day for three days. Defendant nurse "Jane Doe" (later identified as Emerson Turnbull) allegedly was responsible for the task, but did not take Plaintiff's blood pressure.

   A few days later, Plaintiff informed Defendant Kleper that he was having trouble breathing and was bleeding from his rectum. For seven hours, Defendant Kleper did nothing until Lt. Ishman witnessed the bleeding during count. At that time, he told Plaintiff he would be taken to the Emergency Room. Nine hours after his bleeding began, Plaintiff was transported to the Brookville Hospital where he was placed in intensive care due to severe blood loss and blood clots having traveled to his lungs. Plaintiff was given blood plasma and on October 23, 2004, he claims he was given an operation where a green filter was placed in his main artery to prevent blood clots from entering his heart. He further asserts that he was released from the JCP on October 22, 2004, so that it would not have to pay for his operation.

Next, Plaintiff alleges that on May 13, 2005, Dr. Castellano changed his blood pressure medicine, which caused dizziness while standing. Plaintiff claims to suffer from C-6 disc narrowness and four protruding discs in his lower back, and damage to the nerves in his right leg.

Plaintiff seeks to hold ex-Warden Dunkle responsible for failing to provide him with a handicap accessible shower. He seeks to impose liability against Lt. Kleper for her failure to respond to his medical emergency in a timely fashion. He seeks to impose liability against Dr. Castellano for failing to provide proper medical staffing at the prison and ensuring that the shower facilities were handicap accessible as well as changing his medication. He seeks to impose liability against Nurse Turnbull for failing to check his blood pressure three times a day for three days as instructed by the Brookville Hospital.

    C.   <u>Liability under 42 U.S.C. § 1983</u>

Plaintiff seeks to assert liability against Defendants pursuant to Civil Rights Act, 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: (1) that the alleged misconduct was committed by a person acting under color of state law; and (2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled in*

*part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

As a pre-trial detainee, Plaintiff's claims invoke the protections of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520 (1979).

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process, we think that the proper inquiry is whether those conditions amount to punishment prior to an adjudication of guilt in  accordance with law. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Id*. at 535 (citations omitted).

In Bell, the Supreme Court announced the following test for determining whether the conditions of confinement for pre-trial detainees violated the Fourteenth Amendment.

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is

> punishment that may not constitutionally be
> inflicted upon detainees qua detainees.  Courts
> must be mindful that these inquiries spring from
> constitutional requirements and that judicial
> answers to them must reflect that fact rather
> than a court's idea of how best to operate a
> detention facility.

Bell v. Wolfish, 441 U.S. at 538-539 (internal quotations and citations omitted).

The Court of Appeals for the Third Circuit recently reviewed this standard in Hubbard v. Taylor, 399 F.3d 150, 158-159 (3d Cir. 2005).  In Hubbard, the Court of Appeals acknowledged that Bell required the courts to engage in a two-step analysis:

> we must ask, first, whether any legitimate
> purposes are served by these conditions, and
> second, whether these conditions are rationally
> related to these purposes.  In assessing whether
> the conditions are reasonably related to the
> assigned purposes, we must further inquire as to
> whether these conditions cause inmates to endure
> such genuine privations and hardship over an
> extended period of time, that the adverse
> conditions become excessive in relation to the
> purposes assigned to them.  Our inquiry into
> whether given conditions constitute "punishment"
> must therefore consider the totality of
> circumstances within an institution.

Hubbard, 399 F.3d at 159 (internal quotations and citations omitted).

Using this analysis, it is clear that Plaintiff's allegations against Defendants Dunkle, Castellano, and Turnbull do not rise to the level of a constitutional violation under the Fourteenth Amendment.  It cannot be said that providing a shower facility that was not equipped with handrails to a detainee who

walked with a cane, without reference to any specific medical diagnosis or condition, amounted to punishment.  Under the two-part inquiry, the shower facilities at the JCP served the legitimate purpose of providing bathing facilities to the inmates at the JCP.  Second, the shower facilities at the JCP were rationally related to this legitimate governmental purpose.  Plaintiff makes no allegation that he had been medically diagnosed with a condition that could be considered a handicap.  Nor does he make any allegation that the former warden was aware, or should have been aware, of any special need to provide Plaintiff with a handrail equipped shower.  Thus, there is no basis to conclude that providing Plaintiff with a standard shower showed an intent to unlawfully punish him.  At most, it may demonstrate an unintentional failure to anticipate the needs of handicapped individuals.  This sounds, if anything, in negligence, which is not actionable under 42 U.S.C. § 1983.

The Supreme Court repeatedly has made it patently clear that negligence claims cannot support liability under section 1983. *See, e.g.,* County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1720 (1998) (motorcyclist's death that resulted from high-speed police chase was not actionable under 42 U.S.C. § 1983); Collins v. City of Harker Heights, Texas, 503 U.S. 115 (1992) (failure to provide safe work environment did not state a section 1983 claim); DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989) (the state had no constitutional duty to protect a child

against beatings by his father even though the state was aware of the father's abuse and had at one time taken custody of the child); Davidson v. Cannon, 474 U.S. 344, 348 (1986) (clarifying that lack of due care by prison officials does not state a claim under either the substantive or the procedural aspects of the Due Process Clause); Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994) (mere negligence does not satisfy the deliberate indifference standard; a plaintiff must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm) (internal quotation omitted).[2]

    The discussion above reveals that Plaintiff's claims concerning the shower facilities at the JCP do not state a claim upon which relief may be granted under 42 U.S.C. § 1983.  Consequently, Plaintiff's claims against Defendant Dunkle regarding the showers at the JCP should be dismissed.

    Plaintiff also asserts that Defendant Dunkle is liable in his official capacity as the warden of the JCP for failing to provide staff with adequate training in recognizing how to deal with medical

---

2 *See also* Christopher v. Buss, 384 F.3d 879, 882 (7th Cir. 2004) (holding that, even if defendants knew about the allegedly hazardous field condition and purposefully ignored it, the plaintiff would not be entitled to relief as his allegations, at most, asserted negligence); Rocheleau v. Cumberland County Sheriff's Dept., 733 F. Supp. 140 (D. Me. 1990) (holding that inmate's complaint that he sustained injuries when he tripped on open floor drain, hit jail wall and broke his nose failed to state § 1983 claim; complaint alleged nothing more than mere negligence on part of prison officials and did not allege either deliberate or conscious indifference).

emergencies.  Apparently, this claim stems from Plaintiff's allegations concerning the alleged failure of Defendant Kleper to respond to his alleged medical emergency. Because Plaintiff is asserting liability against Defendant Dunkle in his official capacity, his claims will be analyzed as asserting liability against Jefferson County.

Local governing bodies are deemed to be "persons" within the meaning of §1983 and can be sued directly under the act for monetary, declaratory, or injunctive relief. Monell v. Department of Social Services, 436 U.S. 658 (1978).  To establish municipal liability plaintiff must: (1) demonstrate the existence of an unlawful policy or custom, and (2) prove that the municipal practice was the proximate cause of his injury. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  A municipality is liable "where the municipality itself causes the constitutional violation at issue." Canton v. Harris, 489 U.S. 378, 385 (1989).  To establish causation plaintiff must allege a "plausible nexus" or "affirmative link" between the violation and the municipality's custom or practice. Id. 915 F.2d at 850.  A municipality is not liable for the alleged misconduct of its employees absent a link or nexus between the custom or policy and the employee's misconduct because such liability would be predicated upon the doctrine of respondeat superior.  Monell, 436 U.S. at 691.

The precepts set forth by the Supreme Court in City of Canton v. Harris, 489 U.S. 378 (1989) are applicable to Plaintiff's claim.  In

<u>City of Canton v. Harris</u> the Court considered the standard for liability for an official's failure to train.  The court first addressed the "degree of fault that must be evidenced by a municipality's inaction before liability is permitted."  489 at 388.  The Court held that a municipality may be held liable for a failure to train public employees that results in a constitutional violation "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the constitutional rights of its inhabitants."  *Id*.  The Court further observed that "[o]nly where a failure to train reflects a "deliberate" or "conscious" choice by a municipality--a "policy" as defined by our prior cases--can a city be liable for such a failure under § 1983."  *Id*.  The Court further instructed as follows.

> . . .  The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy."  It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees.  But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  It may be, for example, that an otherwise sound program has occasionally been negligently administered.  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.  Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.  And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.
>
> . . .
>
> To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.  In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.  Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities--a result we rejected in <u>Monell</u>.  It would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism.

City of Canton, at 389-392 (internal citations and footnotes omitted).

In the case at bar, Plaintiff has not set forth any allegations to establish liability against Defendant Dunkle on the basis of an alleged failure to adequately provide medical service at the JCP. In this regard, as set forth above, to establish liability on a failure to train theory, the Plaintiff must set forth specific allegations that the need for more or different procedures was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001) (citing City of Canton, 489 U.S. at 390, 109 S.Ct. 1197). Construing his allegations as true and giving him the benefit of all reasonable inferences, Plaintiff has not set forth any allegation upon which to hold Defendant Dunkle liable. Specifically, he has not made any specific factual allegations to support his claim that Defendant Dunkle should be liable based on a policy or custom of providing inadequate medical care to JCP inmates. In this regard, he does not allege any other instances of inadequate medical care at the JCP. Nor does he allege that any valid grievances or complaints concerning inadequate medical care have been filed at the JCP. Moreover, Plaintiff has not identified any specific policy of the JCP that was deficient. Nor has he established that proper medical emergency procedures were not followed at the JCP. Specifically, he has failed

to demonstrate that Dunkle condoned or fostered any policy or custom of tolerating inadequate medical service for prisoners at the JCP. Nor has he identified any supervisory practices or procedures that Defendant Dunkle failed to employ or that it should have been aware that an unreasonable risk of harm existed at the JCP. Finally, he fails to allege that any similar conduct has occurred in the past such that Defendant Dunkle should have been aware that an unreasonable risk of harm existed.[3] Consequently, the motion to dismiss filed by Defendant Dunkle should be granted as to him.

Similarly, the motions to dismiss filed by Defendants Dr. Castellano and Nurse Turnbull should be granted. Plaintiff seeks to hold Nurse Turnbull liable for failing to take his blood pressure three times a day for three days as directed by the Brookville Hospital discharge instructions. In this regard, Plaintiff asserts that he was discharged on October 4, 2004 and then taken back to the hospital on or about October 22, 2004, due to a bleeding event.

---

3  *See* Beers-Capital v. Whetzel, 256 F.3d 120 (3d Cir. 2001) (holding that executive director of state juvenile detention facility could not be held liable under § 1983 on grounds that executive director failed to respond adequately to pattern of past occurrences of employee sexual assaults, given failure to show that executive director was aware of pattern of sexual assaults by facility employees); Montgomery V. DeSimone, 159 F.3d 120, 127 (3d Cir. 1998) (holding that the plaintiff's failure to allege any inadequacy in police training program could not support finding of deliberate indifference necessary to impose municipal liability); Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("the record before us is critically deficient of evidence on which a jury reasonably could have based its conclusion that [the municipality] was deliberately indifferent to the need to train . . . and that this failure to train was the actual cause of the plaintiffs' injuries.").

Thus, it does not appear that the failure to take his blood pressure is causally related to his alleged medical emergency on October 22, 2004.  Moreover, Plaintiff's allegations against Nurse Turnbull allege, at most, negligence and are not actionable under 42 U.S.C. § 1983.

The same is true as to Plaintiff's allegations against Dr. Castellano.  The fact that Dr. Castellano changed Plaintiff's blood pressure medication does not amount to punishment; rather, it amounts to professional care of attempting to find the correct medication among hundreds to treat Plaintiff's high blood pressure.  Moreover, Dr. Castellano has no authority or control over the type of the shower facilities that are available at the JCP. Consequently, the motion to dismiss filed by Dr. Castellano should be granted.

Plaintiff's allegations against Defendant Kleper, on the other hand, do state a claim upon which relief may be granted.  While the Plaintiff's claims must be analyzed under the Fourteenth Amendment, the Court of Appeals for the Third Circuit has instructed that, even though the constitutional protections afforded prisoners and pre-trial detainees against inadequate medical care arise from different textual sources, the standards governing the provision of medical care to each class are similar.  *See* Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987).  In this regard, the Eighth Amendment imposes a duty to provide convicted prisoners with medical treatment for their serious medical needs.  Gamble v. Estelle,

429 U.S. 97 (1978).  In the context of a claimed denial of medical treatment, a plaintiff must prove two elements: (1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to the serious medical need.  <u>Gamble</u>, 429 U.S. at 97.

Plaintiff claims that Defendant Kleper failed to provide him with any medical attention for seven hours during her shift while he was bleeding from his rectum.  It has long been held that defendants may exhibit deliberate indifference by intentionally denying or delaying access to medical care.  <u>Gamble</u>, 429 U.S. at 105-106; <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993) (noting that if the failure to provide adequate care in the form of physical therapy was deliberate and motivated by non-medical factors, then the plaintiff had a viable claim); <u>Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987) (holding deliberate indifference can be found where prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering or the threat of tangible residual injury) (citations omitted), *cert. denied*, 486 U.S. 1006 (1988).

Here, Plaintiff's allegations, accepted as true, state a claim against Defendant Kleper for failure to provide adequate medical care.  This Court cannot determine whether any legitimate purpose was served by the denial of medical treatment for seven hours.  Nor can it determine whether the alleged failure to provide care was

rationally related to such legitimate governmental purposes. Thus the motion to dismiss Plaintiff's claims against Defendant Kleper should be denied.

III. CONCLUSION

It is respectfully recommended that the motions to dismiss filed by Defendant Emerson Turnbull (named as Jane Doe in the Complaint) (doc. nos. 17 & 20) be granted and that the motion to dismiss filed by Defendant Dr. George Castellano (doc. no. 18) be granted. It is further respectfully recommended that the motion to dismiss filed by Defendants Warden Dunkle and Lt. Roxanne Kleper (doc. no. 28) be granted as to Defendant Dunkle and denied as to Defendant Kleper.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
United States Magistrate Judge

Dated: 14 November, 2006

cc: The Honorable Terrence F. McVerry
United States District Judge

Ronald Painter, GD8804

```
801 Butler Pike
State Regional Correctional Facility at Mercer
Mercer, PA 16137

All counsel of record via Notification of Electronic Event
```