IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD PAINTER, | ) | |
| Plaintiff | ) ) ) | |
| vs. | ) ) | Civil Action 05-1273 Judge Terrence McVerry/ |
| WARDEN DUNKLE; Lt. ROXANNE KLEPER; Dr. COSTELLANO; and Nurse JANE DOE, | ) ) ) ) | Magistrate Judge Amy Reynolds Hay |
| Defendants | ) | Re Dkt. [59] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that defendant's motion for summary judgment be denied.

REPORT

Ronald Painter, Jr. ("Plaintiff") was, at the time of the events giving rise to this suit, a pre-trial detainee at the Jefferson County Jail. Dkt. [60] at 1 ("On October 21, 2004, Plaintiff was a pre-trial detainee at the Jefferson County Jail."). He claims that the only remaining defendant in the case, i.e., Lt. Klepfer[1] was deliberately indifferent to his serious medical needs when she waited roughly five hours to do anything after he told her that he was bleeding from his rectum.

Presently before the Court is Lt. Klepfer's motion for summary judgment. Because there are material factual disputes over whether she possessed the requisite mindset, Defendant Klepfer's motion for summary judgment should be denied.

***Applicable Legal Standard***

---

[1] Although at times, Defendant Klepfer's name is spelled as "Kleper" in the record, it appears the correct spelling is "Klepfer." Dkt. [61-3] at 2.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), quoting Fed.R.Civ.P. 56(e). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52. In analyzing the record, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. McCarthy v. Recordex Serv.,Inc., 80 F.3d 842, 847 (3d Cir. 1996).

**Discussion**

At the time the events of the complaint occurred, it is undisputed that Plaintiff was a pre-trial detainee. Both parties agree that the substantive law that governs Plaintiff's claim is the legal standard applicable to a pre-trial detainee and that that standard is the one announced in

Estelle v. Gamble, 429 U.S. 97 (1976). Dkt. [62] at 5 to 6; Dkt. [64] at 5. Even the Court of Appeals recently explained in an unpublished case that

> [a] claim by a pretrial detainee challenging the conditions of confinement in a state detention facility is analyzed under the Due Process Clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005). Where the challenge concerns medical care received at the facility, the applicable standard is the one set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976). *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir.2003). Under this standard, "plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (*citing Estelle*, 429 U.S. at 106).

Watkins v. Cape May County Correctional Center (Medical Dept.), 240 Fed.Appx. 985, 986 (3d Cir. 2007). But cf. Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 n.5 (3d Cir. 2003)(suggesting that the Fourteenth Amendment may provide greater protections for pre-trial detainees than the Eighth Amendment provides for convicted prisoners). Nevertheless, the Court believes that the parties are wrong concerning the applicability of the Estelle standard. See, e.g., Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005)("The district court then erred in concluding that 'pretrial detainees are afforded essentially the same protection as convicted prisoners and that an Eighth Amendment analysis is appropriate for determining if the conditions of confinement rise to the level of a constitutional violation.'").

In Hubbard, the District Court held that pre-trial detainees are afforded essentially the same protections as convicted prisoners under the Eighth Amendment and granted summary judgment in favor of the Defendant jailers, finding no genuine dispute as to whether the inmates' rights were violated. The Court of Appeals held it to have been error for the Court to apply the Eighth Amendment standards and reasoned as follows:

> The district court's error is understandable given our discussion in *Kost*. There, we were discussing medical and nonmedical conditions of confinement. Although we specifically stated that the Eighth Amendment provided a floor for

3

our due process inquiry into the medical and nonmedical issues, much of our discussion focused on whether the plaintiffs had established the "deliberate indifference" that is the hallmark of cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Moreover, we failed to cite *Bell v. Wolfish* which, as we have explained, distinguishes between pretrial detainees' protection from "punishment" under the Fourteenth Amendment, and convicted inmates' protection from punishment that is "cruel and unusual" under the Eighth Amendment. [22]

Nevertheless, it is clear that plaintiffs here "are not within the ambit of the Eighth Amendment['s]," prohibition against cruel and unusual punishment. *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987). They are not yet at a stage of the criminal process where they can be punished because they have not as yet been convicted of anything. As the Supreme Court explained in *Bell*, pre-trial detainees cannot be punished at all under the Due Process Clause.

As we have already explained, *Bell v. Wolfish* established that standard. The district court therefore relied upon seemingly applicable language in *Kost* without considering its context, or the controlling authority of *Bell v. Wolfish*.[23] Accordingly, we must reverse the district court's grant of summary judgment to the prison officials on the pre-trial detainees' conditions of confinement claim and remand for a proper analysis of that claim under the standard announced in Bell v. Wolfish.

---

[22] Even before Kost, we had analyzed a pre-trial detainee's claim of inadequate medical treatment under the Eighth Amendment standards articulated in *Estelle v. Gamble*. For example, in *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), we held that "at a minimum, the 'deliberate indifference' standard of *Estelle v. Gamble*, must be met" at an institution housing pre-trial detainees, and in *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987), we noted that even though the constitutional protections afforded prisoners and pre-trial detainees against inadequate medical care arise from different textual sources, the standards governing the provision of medical care to each class are similar. We have continued this practice after *Kost. See*, *e.g.*, *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003) ("In previous cases, we have found no reason to apply a different standard than that set forth in *Estelle* ... We therefore evaluate Natales' Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment.").The analysis is further confused because *Kost* suggests a separate and distinct analysis governs nonmedical and medical claims under the Eighth Amendment. However, in *Seiter*, the Court stated:

> Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medicinal needs, or a combination of both, it is appropriate to apply the deliberate indifference standard articulated in *Estelle*.

501 U.S. at 304 (brackets in original) (internal quotation marks omitted).

[23] In *Kost*, we evaluated claims by pretrial detainees that the conditions of their confinement were unconstitutional. Although we focused on whether the plaintiffs had established the "deliberate indifference" that characterizes cruel and unusual punishment in violation of the Eighth Amendment, *see Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), we specifically distinguished between the protections of the Due Process Clause and those of the Eighth Amendment. *Kost*, 1 F.3d at 188 ("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause.") (*quoting Boring v. Kozakiewicz*, 833 F.2d 468, 471 (1987)). Moreover, we recognized that pretrial detainees are entitled to greater constitutional protection than that provided by the Eighth Amendment. Id. at 188 n. 10. Although we did not specifically cite *Bell v. Wolfish*, our analysis in *Kost* is consistent with Bell's distinction between pretrial detainees' protection from "punishment" under the Fourteenth Amendment, on the one hand, and convicted inmates' protection from punishment that is "cruel and unusual" under the Eighth Amendment, on the other.

Hubbard v. Taylor, 399 F.3d at 166-67. In light of the reasoning in Hubbard, the court concludes that the Estelle standard of the Eighth Amendment is not per se applicable to this case, which involves a pre-trial detainee.

Given the state of the case law and pronouncements by various courts, it is not surprising that this area is confused and the parties are confused as to the applicable standard. However, rather than striking the summary judgment motions and having the parties go through the expense of refiling and rearguing under the correct standard, the court will apply the standard of Estelle as the parties have invited, albeit erroneously. The court does so in the interest of judicial economy and with the understanding that the Fourteenth Amendment protections are, in fact greater for pre-trial detainees than the protections afforded under the Eighth Amendment to convicted prisoners. However, the court's recommendation that the evidence presents a material question of fact and summary judgment should be denied under the lesser protections of the Eighth Amendment, would, *a fortiori*, be correct under the greater protections afforded by the Fourteenth Amendment. If an act violates the lesser protections afforded, it follows, as a matter

of logic, that the same act would violate the greater protections afforded. Under the unique circumstances of this case and understanding the foregoing analysis, we apply Estelle.

Defendant Klepfer, through her counsel, conceded that the second prong of the Estelle test, i.e., a serious medical need, is met. Dkt. [62] at 6 ("For the purposes of this motion, it is not contested that plaintiff's bleeding constituted a serious medical need."). Hence, the only issue is whether there is evidence to support the other prong, i.e., is there evidence to establish that Defendant Klepfer acted with deliberate indifference.

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal quotations omitted). The Court explained that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Moreover, proof of the scienter requirement in this area of the law is like proof of scienter in any area of the law, circumstantial proof will suffice. As the Supreme Court explained:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, *cf. Hall* 118 (cautioning against "confusing a mental state with the proof of its existence"), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Cf. LaFave & Scott* § 3.7, p. 335 ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of").

Farmer v. Brennan, 511 U.S. at 842.

Viewing the summary judgment record in a light most favorable to Plaintiff, as the nonmoving party, the following is revealed.

On October 11, 2004, Plaintiff was transported from the Jefferson County Jail to Brookville Hospital for an evaluation of a potential pulmonary embolism. Dkt. [60] at 2. Plaintiff was diagnosed with a pulmonary embolism that day and was admitted to the hospital. Id., at 2 to 3. On October 16, 2004, while still in the hospital, Plaintiff was reported to have had blood in his stool and a colonoscopy was scheduled. Id., at 3. On October 17, 2004, a colonoscopy was performed that revealed a polyp in the colon, which polyp was removed. Id. Plaintiff was discharged back to Jefferson County Jail on October 18, 2004. Id. While at the hospital, Plaintiff was prescribed Coumadin, 5 mg. daily, a blood thinner, which may result in bleeding. Dkt. [63] at 4.

Plaintiff's deposition testimony establishes that thee days later, on October 21, 2004, he told Defendant Klepfer at 7:45 a.m., while she was conducting the morning head count, that he had just gotten off of the toilet after a bowel movement and there was blood in the toilet. Dkt. [61-2] at 10 to 11 pp. 61 to 65 of the Plaintiff's deposition transcript. Plaintiff testified that she came into his cell, saw the blood and said I am going to have to call the doctor. Id., at 11, p. 64 of the transcript.

Defendant Klepfer contends that Plaintiff did not inform her at 7:45 a.m that Plaintiff was bleeding from his rectum. Dkt. [60] at 5 n.1. Rather, Defendant Klepfer contends that Plaintiff did not tell her about his bleeding until roughly around 12:33 p.m. Id. Defendant Klepfer points out that the medical records indicate that Plaintiff told the medical personnel at the hospital to which he was eventually transferred that the bleeding did not begin until 11 a.m. Id. The medical records support this. Dkt. [61-9] at 2. Defendant Klepfer contends that "plaintiff's

7

recollection [of telling Klepfer about the bleeding at 7:45 a.m.] is clearly incorrect and could not be accepted by a jury." Dkt. [60] at 5. Be that as it may, Klepfer has presented no legal authority to this court that would enable it to make this credibility determination and to disbelieve Plaintiff's deposition testimony as to the timing of the events. In light of this, the court has no choice but to accept Plaintiff's version of the facts which he presented in his deposition under oath, as true.[2] Sloan v. City of Pittsburgh, 110 Fed.Appx. at 208. It is for the jury to disbelieve Plaintiff (if the jury does do so), not this Court.

The record shows that after being told of Plaintiff's bleeding at approximately 7:45 a.m., Defendant Klepfer did nothing until nearly 4 hours and 45 minutes later, when, around 12:33 p.m. she began to make a series of phone calls to the nurse who was on call for the jail, and then to the doctor who was on call for the jail, and failing to get either one of them, Defendant Klepfer retrieved Plaintiff's medical records from his hospitalization just several days earlier, which records the jail had, and searched those files for the name of one of Plaintiff's treating physicians at Brookville Hospital. She called Brookville Hospital to contact that treating physician but apparently could only leave a message. See Dkt. [60] at 10; Dkt. [61-6]. Not hearing back from the treating physician, Defendant Klepfer attempted to call the treating physician again around 2:17 p.m but again had to leave a message. See Dkt. [60] at 10.

Another Lieutenant came on duty and Defendant Klepfer told the new Lieutenant about Plaintiff's situation, and about the calls Defendant Klepfer had made and that when any of the medical personnel call back, the Lieutenant should relay the information to the medical personnel

---

[2] This is true notwithstanding the fact that once every hour a corrections officer checks on the inmates in Plaintiff's housing unit and that no other corrections officers reported that Plaintiff complained prior to 11 a.m. to them about anything. Dkt. [60] at 6. That this is so goes to Plaintiff's credibility, something that, for all Defendant Klepfer proffers, this Court has no authority to resolve.

8

about Plaintiff. Dkt. [60] at 12. Apparently Defendant Klepfer's shift ended around 4:00 p.m. Dkt. [61-3] at 16. No medical personnel had called back yet. Medical personnel did not call back until approximately 6:00 p.m. and the physician stated that "if there is a lot of blood in Mr. Painter's toilet, he will need to go to the ER." Dkt. [60] at 13. Plaintiff was then transported to the hospital and admitted and remained there until five days later when he was discharged. Dkt. [60] at 14.

In view of this evidence, the Court is not convinced that, based on the foregoing, no reasonable jury could find for Plaintiff. The fact of a delay of roughly four hours and forty-five minutes between the time Plaintiff first told Defendant Klepfer about his bleeding (if we accept Plaintiff's version as true, which a jury may or may not accept as true) and the time Defendant Klepfer took any action, especially in light of Plaintiff's recent hospitalization and his being on Coumadin, a blood thinner, presents sufficient circumstantial evidence as to whether Defendant Klepfer acted with deliberate indifference to Plaintiff's safety. We conclude that a reasonable jury could find such a delay evidences Defendant Klepfer knew of and disregarded an excessive risk to Plaintiff's health or safety. See, e.g., Whisenant v. Yuam, 739 F.2d 160,163 (4th Cir. 1984) ("because there was evidence that Whisenant was bleeding orally and rectally by at least 4:25 a.m. on July 8, if not before, but did not receive adequate medical treatment until 9:55 p.m. that night, when immediate life-sustaining measures were required, the claim of deliberate indifference is not frivolous."), *abrogation on other grounds recognized in*, Garrett v. Elko, 120 F.3d 261, 1997 WL 457667 at *5 (4th Cir. 1997) (Williams, J., dissenting) (Unpublished)); Harris v. Coweta County, 21 F.3d 388, 393-394 (11th Cir. 1994) (citations omitted)("The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. A few hours' delay in receiving medical care for emergency

needs such as broken bones and bleeding cuts may constitute deliberate indifference. Delayed treatment for injuries that are of a lesser degree of immediacy than broken bones and bleeding cuts, but that are obvious serious medical needs, may also give rise to constitutional claims.").

Accordingly Defendant Klepfer's summary judgment motion should be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, plaintiff is permitted to file written objections by April 21, 2008 in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights

Respectfully submitted,

*/s/ Amy Reynolds Hay*
United States Magistrate Judge

Dated: 3 April, 2008

cc: The Honorable Terrence McVerry
United States District Judge

All counsel of record by Notice of Electronic Filing